JOSIAH W. LEEDS, EXECUTOR OF THE LAST WILL AND TESTA-

MENT OF ELIZABETH BASSETT, DECEASED,

VS.

SALENA SPARKS.

*New Castle, Sept. T. 1898.*

Where a testatrix devised all her property, real and personal, to her executor, in trust to pay over the net income to her brother during his life, and upon his decease, directed her executor, after the payment of debts, to pay out of her estate certain pecuniary legacies, and further directed that the legacies should be increased or abated ratably, in case there was an excess or a deficiency in the estate; on bill for specific performance of a contract for the sale of the real estate of the testatrix by her executor, *held.*

1. That there was an implied power of sale conferred upon and vested in the executor by the will.

2. That the purchaser of the real estate from the executor was not bound to see to the application of the purchase money for the lands and premises sold, inasmuch as the trust was for the payment of debts generally, and also of legacies.

3. Specific performance will be decreed of a contract of sale by the executor under said will.

BILL FOR SPECIFIC PERFORMANCE.—The facts set forth by the bill were as follows:—

Elizabeth Bassett was in her lifetime seized in fee of a lot of land with a brick dwelling house thereon erected, in Wilmington, and being so seized, she made her will devising to her "executor hereinafter named, his heirs and assigns, all my property real and personal, in trust nevertheless to pay over the net income thereof to my brother Mark S. Bassett, during the term of his natural life,—my said brother, if he so desires, to occupy my dwelling house No. 1213 Market street, Wilmington, as his residence."

The testatrix further provided in her said will that "upon the decease of my brother, the said Mark S. Bassett,

it is my will and I hereby direct that my executor hereinafter named, shall pay out of my estate" pecuniary legacies in the said will enumerated, being all bequeathed to nephews and nieces and children of deceased nephews.

And the said testatrix further provided that, "Should there be any residue after the payment of my debts, and the expenses of settling my estate, I give and bequeath the same, in equal shares, to my nephews and nieces as above named or indicated, or the survivors of them, the children of any deceased nephew or niece to take their parents' portion.

"But should the total net proceeds of the estate be not sufficient to pay the bequests in full, as above provided, then the deficiency shall be similarly deducted from the respective bequests."

The testatrix died April 26, 1890, leaving unrevoked her said will, which was after her death duly proved and letters testamentary thereon were granted on May 3, 1890, to the complainant, Josiah W. Leeds, who took upon himself the execution of the will.

The said Mark S. Bassett, the *cestui que trust* for life, died May 2, 1892. The bill alleged that the complainant was, under the said will, seized and well entitled in fee of, in and to the lands and premises mentioned, and that upon the death of the said Mark S. Bassett, the complainant was empowered to sell the same. Being so entitled and empowered, the complainant entered into an agreement for the sale of said lands on December 23, 1898, a copy of which was annexed to the bill.

The agreement of sale was in the ordinary form, and stipulated for the sale of the premises for the sum of $3150, of which $150 was to be paid upon the execution of the agreement, and the balance of $3000 on or before October 25, 1898. The respondent agreed to pay her proportionate share of water rent and taxes, and possession was to be delivered on October 25, 1898, and the party of the first part covenanted to convey a good title in fee simple, clear of incumbrances.

The bill acknowedged the receipt from the respondent of $150, part of the purchase money, and alleged that he was

ready and willing to perform his part of the agreement and on the payment of the balance of the purchase money to convey to the respondent in fee simple. But the complainant further alleged that the respondent was ready and willing to perform the agreement on her part if the complainant could make a good and marketable title, but she denied that he was able so to do.

The prayers were for answer, for specific performance of the agreement, for other relief and subpoena.

The respondent by her answer admitted all the facts set forth in the bill and admitted her desire to purchase the property, but she denied that the complainant was empowered to sell the lands and premises upon the death of Mark S. Bassett; and not being so empowered, the complainant was unable to carry out the provisions of the article of agreement, particularly that which stipulated for the delivery of a good and lawful deed in fee simple clear of incumbrances.

The answer further alleged that even if the complainant had power to sell and convey the lands in fee simple, yet there was no allegation in the bill that the purchaser of the premises at a sale by the executor under an implied power should take the lands and premises free and discharged from liability to the legatees, or their representatives, for the application, non-application, or mis-application of the purchase money.

The answer submitted that no decree for specific performance should be made, except upon the condition that the purchase money should, at the time of the payment thereof to the complainant and of the conveyance by the complainant to the respondent, be applied to the payment and discharge of the legacies.

The bill was filed Oct. 29, 1898, and the respondent appeared Nov. 2, following, and immediately filed her answer.

The case came to a hearing on bill and answer.

*J. Frank Biggs*, for the complainant.

If a testator directs that to be done by his executor, which necessarily implies that his estate is to be converted into money, a power is given by this implication to the exe-

cutor to sell the real estate. *Harker vs. Reilly*, 4 *Del. Ch.* 72; *Going vs. Emery*, 16 *Pick.* 107; *Putnam Free School vs. Fisher*, 30 *Me.* 523; *Morton vs. Morton*, 8 *Barb.* 18; *Stewart vs. Hamilton*, 37 *Hun* 19; *Van Winkle vs. Fowler*, 52 *Hun* 355; *Vanness vs. Jacobus*, 17 *N. J. Eq.* 153; *Haggerty vs. Lanterman*, 30 *N. J. Eq.* 37; *Belcher vs. Belcher*, 38 *N. J. Eq.* 126; *Holman vs. Tigges*, 42 *N. J. Eq.* 127; *Lindley vs. O'Reilly*, 50 *N. J. L.* 636; *Bateman vs. Bateman*, 1 *Atkyns* 421; *Mower vs. Orr*, 7 *Hare* 473.

The language used by the testatrix charges her real estate with debts and legacies. 3 *Jarm., Wills* (5 *Amer. Ed.*) 398, *ch.* 45.

Where the trust is for the payment of debts generally, and also for the payment of legacies, the purchaser is not bound to see the money applied, upon a sale made for the payment of legacies. *Elliott vs. Merryman*, 1 *Wh. & Tud.* (*Pt.* 1) 72, 113; *Potter vs. Gardner*, 12 *Wheat.* 498; *Gardner vs. Gardner*, 3 *Mason* 178; *Andrews vs. Sparhawk*, 13 *Pick.* 393, 401; *Grant vs. Hook*, 13 *S. & R.* 259, 262; *Cadbury vs. Duval*, 10 *Barr* 265; *Clyde vs. Simpson*, 4 *O. St.* 445; *Sims vs. Lively*, 14 *B. Mon.* 433, 435; *Grotenkemper vs. Bryson*, 79 *Ky.* 353, 358; 2 *Sugden on Vendors* 382, *Par.* 9, 10; 1 *Lew. Tr.* 547.

*Anthony Higgins*, for respondent, submitted the case to the judgment of the Court. The respondent was not only willing but desirous to carry out the contract of sale, if it should be considered by the Court that the Trustee had power to sell and convey a good and marketable title.

THE CHANCELLOR was of opinion that under the last will and testament of Elizabeth Bassett, deceased, the complainant was empowered to sell the lands and premises in the bill of complaint mentioned and described.

He also considered that the defendant is not bound to see to the application of the purchase money for said lands and premises, inasmuch as the trust was for the payment of debts generally and also of legacies.

And the complainant being so empowered to convey a good title in fee simple, and having the right and authority

to convey, and being able to convey a clear and unincumbered title to the said premises, the respondent was in equity bound specifically to perform the agreement for the sale of the lands and premises in the bill of complaint set forth, and to pay to the complainant the remainder of the purchase money mentioned and provided in said agreement.

A decree was accordingly entered on January 5, 1899, requiring the defendant to pay the balance of the purchase money, and upon such payment, the complainant was directed to make, execute and deliver to the defendant a proper conveyance of the lands and premises in the bill mentioned, and to let the defendant into possession of the same.

And it was further ordered that the defendant pay the costs