(71 App. Div. 21.)

### WALTER v. TOMKINS et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

1. WILLS—CONSTRUCTION—POWER OF EXECUTORS TO SELL REAL ESTATE.

A testator "authorized and empowered" his executors "to lease and sell" his real estate, and to execute sufficient conveyances, to rent the real estate and use the rents for specified purposes, and directed them "to sell" certain real estate before his son attained his majority, and upon the death or remarriage of his wife, the executors were directed to transfer the property to his son, or his issue. *Held*, that the executors were given a general power of sale.

2. EJECTMENT—COMPLAINT—SALE OF LAND BY EXECUTORS.

A complaint in ejectment by a legatee against the grantees of the executors in a will authorizing them to sell the testator's real estate for the payment of debts, if the personal estate prove insufficient therefor, which does not allege that the personal estate was sufficient for the payment of the debts, and that it was unnecessary to sell the real estate, is defective, for failing to show that the exercise of the power of sale was unauthorized.

Appeal from special term, New York county.

Ejectment by Leon T. Walter against Henry Tomkins and others, impleaded with Archibald D. Russell. From a judgment for defendants sustaining a demurrer to the complaint for insufficiency, plaintiff appeals. Affirmed.

The complaint averred: "(1) That one John Walter, late of the city of New York, deceased, was, at and before his death, seised in fee simple and in possession of the * * * premises known by the street number 173 Macdougal street, in the city of New York. * * * (2) That on or about the 29th day of October, 1875, the said John Walter died, leaving, him surviving, the plaintiff, his only child and heir at law, and Henriette Walter, his widow and the mother of this plaintiff. (3) That said John Walter left his certain last will and testament, a copy of which is hereto annexed * * * and * * * made a part of this complaint. * * * (4) That thereafter * * * said last will and testament was duly admitted to probate

* * * and the executors therein named duly qualified and acted as such, and thereafter, but prior to the times hereinafter named, the said Charles Henry Fournier duly resigned, and the said Paul Provot thereafter continued to act as sole executor and trustee of said last will and testament. (5) That thereafter, and on or about the 2nd day of February, 1896, said Henriette Walter, the mother of this plaintiff and the widow of said John Walter, died at the city of New York, and that she never remarried during her said widowhood. · (6) That on or about the 26th day of February, 1890, the defendant Russell, acting or assuming to act under and by virtue of a certain pretended deed of conveyance thereof to him by one Newman Cowen, dated on that day, and to whom said Paul Provot, acting or assuming to act as surviving executor and trustee of said John Walter, deceased, had by deed dated on or about the first day of October, 1889, conveyed or assumed to convey said property, unlawfully entered into, and now is in possession and actual occupancy of said premises, without the leave or consent of the plaintiff, or any right or title thereto, and wrongfully, unlawfully, and improperly withholds possession thereto from this plaintiff. (7) That the defendants Tomkins and McIndoe are copartners in trade under the firm name and style of Tomkins, McIndoe & Company, and that they have unlawfully entered into and now are in possession and actual occupancy of said premises, or a part or parts, portion or portions, thereof, under an alleged lease or hiring thereof from the defendant Russell, and without leave or consent of the plaintiff, or any right or title thereto, and wrongfully, unlawfully, and improperly, withhold possession thereof from this plaintiff, to his damage ten thousand ($10,000) dollars. Judgment is demanded for the possession of the property, for damages against the defendants Tomkins & McIndoe in the sum of $10,000, for costs and disbursements, and for such other relief as may be proper." The annexed will is as follows: "I, John Walter, of the city of New York, bootmaker, being of sound and disposing mind and memory, do hereby make and declare this my last will and testament in manner following; that is to say: Imprimis, I nominate, constitute, and appoint my friends, Charles Henry Fournier, of the city of Brooklyn, and Paul Provot, of the city of New York, executors of this my last will, and I request them to pay all my just debts as soon as conveniently may be after my decease. And I hereby authorize and empower my said executors, or the survivor of them, to lease and sell all my real estate and chattels real, and full and sufficient conveyances in the law for the same to execute, acknowledge, and deliver. Item. I give to my beloved wife all the household furniture, silver plate, and jewelry of which I shall die possessed. Item. I give, devise, and bequeath unto my said executors and the survivor of them all the rest and residue of my property, both real and personal, in trust: (1) To sell and dispose of my stock in trade and good will of my business, and to collect all sums of money due and owing to me, and with the proceeds to pay and discharge all my just debts, including a bond and mortgage given by me upon property in Macdougal street. (2) In case the money due me and the proceeds of the sale of stock in trade shall exceed the amount of debts due and owing by me, then to invest the same upon bond secured by mortgage upon real estate situated in the state of New York. (3) In case the lease of No. 25 East 14th street now held by me be unexpired at the time of my decease, then to permit my wife to occupy the third story thereof free of rent until such lease expires. (4) To rent all of the real estate owned by me, and from said rents to pay all taxes and assessments that may be levied upon the same, and also to keep the same insured, and to pay over unto my said wife, so long as she remains my widow, the balance of said rents, and the interest upon my personal property invested, in quarterly payments. (5) The payments to my said wife to be accepted by her in lieu of dower, and she to give a release thereof to my said executors, and, until my son attains the age of twenty-one years, my said wife is to be charged with his support out of the payments made to her by my executors. (6) I hereby direct my said executors, or the survivor of them, to sell and dispose of all my real estate in Westchester county before my son arrives at age, and, if he be of age at the time of my death, then, within one year after my decease, upon such terms, and either for cash or partly upon credit, as they may deem best.

And upon my son attaining his majority to pay over to ·him the net interest of the proceeds of said real estate in Westchester county semiannually, and when my said son shall attain the age of twenty-five years then to pay and transfer to him the proceeds of the sale of said real estate in Westchester county. Item. Upon the death or remarriage of my said wife, whichever shall first happen, to convey, transfer, and set over unto my said son all my estate, both real and personal, and in case of the death of my son before the death or remarriage of my wife leaving issue him surviving then to convey, transfer, and set over unto such issue per stirpes, and not per capita, all my estate, both real and personal. Item. In case of the death of my said son before the death or remarriage of my wife leaving no issue him surviving, then to convey, transfer, and pay over all my said estate unto my wife absolutely. In witness whereof I have hereunto set my hand and seal this 20th day of September, one thousand eight hundred and seventy-five. John Walter. [L. S.]" The defendant demurred, upon the ground, among others, that the complaint does not state facts sufficient to constitute a cause of action; and, this demurrer having been sustained, and judgment entered thereon, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

William L. Mathot, for appellant.

William L. Snyder, for respondents.

O'BRIEN, J. The action, which is one in ejectment, requires a construction of the will of plaintiff's father, and raises the issue whether or not the power of sale, under which the property was conveyed by mesne conveyances to defendant Russell, was legally exercised, so as to give good title. The question thus presented on this appeal, relating to the exercise of a power of sale in a will, has so frequently been before the courts that it is unnecessary to refer specifically to the provisions of the Revised Statutes as now incorporated in the third subdivision of section 76 of the real property law concerning the subject, or to the numerous cases which have arisen under these provisions. The two views as to when a power of sale is limited, and when general, are discussed in Sweeney v. Warren, 127 N. Y. 426, 28 N. E. 413, 24 Am. St. Rep. 468, and McCready v. Insurance Co., 83 Hun, 526, 32 N. Y. Supp. 489. In the former, the provision of the will authorized the executors to sell "for the purpose of discharging all" debts, and when the executors sold the land, both they and the purchaser knew that the testator's personal property was more than sufficient to pay such debt. It was accordingly held, referring to the will, that:

"By this provision the lots mentioned are not converted into money out and out, but the executors are empowered to convert them for a specific purpose, to wit, the payment of the testator's debts. When a testator authorizes his executors to sell and convert into money all or a part of his realty for a specific purpose, which fails or is accomplished without a conversion, the power is extinguished, and the land cannot be sold by virtue of it, or treated as money, but it descends to the heir unless it is devised."

On the other hand, in the McCready Case, supra, we have an instance of a general power of sale. There, as here, the power was given in the second clause of the will, and it was said:

"If we examine critically this second clause of the will, we ascertain that the power of sale is associated with the widest latitude of management and control of the whole estate. We find that it is a power created at the begin-

nIng of the Instrument, before any dispository provision is mentioned; that it stands separate from any other provisions of the will, and that it is not by necessary construction made inseparable from the trust which is created in the residuum of the estate."

Regard being had to the character of the estate and the intent of the testator, as shown by the language employed in the will before us, we do not think, as claimed by the plaintiff, that the power was a limited one, intended merely for the purpose of paying debts, as in the Sweeney Case, and one therefore to be exercised only by executors, and not by trustees. Although the power to sell follows closely after the provision directing the payment of debts, the intention of the testator was evidently to confer, as in the McCready Case, a general and full power of sale, which those named as executors and trustees had the right to exercise, not alone for the purpose of administration, but as prudence might dictate, during the continuance of the trust.

The argument against its being a general power, drawn from the fact that the testator subsequently directed them to sell the Westchester property before the arrival of his son at age, is, we think, without force; because, while it is true that the provisions show the wish of the testator to be that in any and all events the Westchester property should be sold before the time mentioned, this was in no sense inconsistent with, nor did it impair or cut down, the complete and absolute power which had been granted in the previous portion of the will. That there is no inconsistency between the two clauses becomes evident if we annex to the clause containing the general power of sale the provision which is mandatory as to the sale of the Westchester property. When read together, they show that as to one the power given was discretionary and general, and as to the other it was mandatory, and to be exercised for a specific purpose, namely, to convert that particular property into money to hand the proceeds over to the son upon his attaining majority.

With respect to all the other property, real and personal, the trust upon which it was to be held is clearly set forth; and were it the intention of the testator that the identical property which he left was to continue in specie, it would have been no difficult matter for him to have so stated, and, instead of conferring a general power of sale, to have limited the power expressly to the payment of debts.

So far as appears from the complaint, there is nothing to show that, even for the purpose of paying debts, it was not necessary to sell the piece of property here involved; and the complaint is defective therefore in not alleging that there was a sufficient amount of personal property, or that this particular piece of property need not have been sold for such purpose. This, under the plaintiff's own construction of the will, was necessary to be stated in order to show that the exercise of the power of sale was invalid. We do not desire, however, to place our affirmance of the judgment appealed from on this narrow ground, but upon the broader field that the power of sale, by the language creating it,—whether the will established an express trust or whether there was given a mere power in trust,—was one not limited to the payment of debts, but was a complete and absolute power of sale, which, when exercised, either for the purposes of administration

or in the discretion of the executors and trustees to fulfill the purposes of an express trust, or to carry out the wishes of the testator, conveyed a good title to the grantee.   For this reason, therefore, we think that the judgment sustaining the demurrer to the complaint was right, and should be affirmed, with costs.   All concur.